**Opinion filed February 29, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00300-CR

_____

## ANDRES LEE SCHUMAN JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR54799**

### M E M O R A N D U M   O P I N I O N

Appellant, Andres Lee Schuman Jr., was indicted for the first-degree felony offense of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03(a), (b) (West 2019). Appellant's case proceeded to trial twice. During his first trial, Appellant moved for a mistrial on the grounds that the State had failed to disclose material evidence, which the trial court granted. Thereafter, the State reindicted Appellant and alleged an alternative manner and means of committing the same offense. Appellant subsequently filed a motion to dismiss the reindictment alleging that the

State had violated his right to a speedy trial. After an evidentiary hearing, the trial court denied Appellant's motion.

Appellant's second trial commenced approximately six months later, and the jury found Appellant guilty of the charged offense and assessed his punishment at nineteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Appellant argues that (1) the trial court erred when it denied his motion to dismiss, and (2) the evidence is insufficient to support the jury's finding of guilt. We affirm.

## I. *Factual Background*

The underlying offense arises from a robbery that stemmed from an anticipated drug deal. On September 5, 2019, an individual referred to as "Cttg.trapboy" (the buyer) reached out to Caleb Brady via Snapchat and asked to purchase twenty grams of marihuana. Brady instructed the buyer to meet him at Kiwanis Park in Midland to conduct the exchange.

After the buyer informed Brady that he had arrived at Kiwanis Park, Brady instructed the buyer to meet him at a certain picnic bench to complete the drug purchase. During their conversation, the buyer told Brady that he had "a cousin or something" with him at the park. Brady then left his house to meet the buyer.

Brady arrived at the park around 8:00 p.m. with the marihuana in a backpack. Brady observed two people, "a skinny one and a heavyset one," sitting at the designated park bench. In court, Brady identified Appellant as the heavyset individual. After Brady sat down at the bench across from the two men, Appellant pulled out a handgun, pointed the weapon at Brady, and told him not to "make any moves or [try] anything."

Brady testified that the two men stood up from the bench and approached him. The skinny individual then tried to take the backpack containing the marihuana from Brady. Brady testified that while they struggled over the backpack, the two men

2

became distracted—possibly by another individual walking in the park. Brady then struck Appellant, causing Appellant and his companion to flee. After Brady had chased Appellant for "a couple" of steps, Appellant shot him twice, striking Brady in the neck and lower back. As a result, Brady sustained seven broken ribs, the loss of half of one of his lungs, and ongoing back pain.

One witness, Steven Smith, testified that, while he was walking in the park, he saw a couple of individuals attempting to gain control of a bag from a "kid" who was near the park benches. After observing the altercation, Smith heard several gunshots. As Smith was running away from the park, he heard a vehicle "take off." Smith then returned to the park to assist Brady, and he called 9-1-1 to report the shooting.

Sergeant Michael Ball of the Midland Police Department was dispatched to the scene. Upon his arrival, a witness directed Sergeant Ball toward Brady who was lying on the ground. Sergeant Ball provided aid to Brady. While at the scene, Sergeant Ball discovered Brady's backpack, which contained the marihuana, and a portion of a "pellet gun" that was near the benches several yards away from where Brady had collapsed.

Detective Rosie Rodriguez of the Midland Police Department investigated the shooting and concluded that Appellant was associated with the phone number for the buyer's Snapchat account. Appellant was later identified by Brady in a photo line-up as the shooter.

Appellant was arrested on January 23, 2020. On March 25, 2020, the State indicted Appellant for aggravated assault. The trial court initially set Appellant's first trial for July 26, 2021, with an alternative setting date of August 9, 2021. The first trial was set to proceed on August 9, 2021; however, Appellant filed a motion for continuance because he and two witnesses had contracted COVID-19. The trial court granted Appellant's motion on August 5, 2021, and the trial setting was reset

for August 24, 2021.  The trial court later reset the trial date for September 13, 2021, with an alternate trial date of September 27, 2021.

Appellant filed an agreed motion for continuance on September 8, 2021, and requested that the September 27, 2021 trial date be postponed, which the trial court granted.  The trial court subsequently rescheduled the trial date for October 11, 2021.  The State filed a motion for continuance for this setting due to unavailable witnesses, which the trial court granted, and the trial date was reset for November 29, 2021.

On February 1, 2022, the trial court signed an order resetting Appellant's trial for February 28, 2022.  Appellant's trial began on that date.[1]  During the first trial, Appellant moved for a mistrial claiming that the State had failed to disclose material evidence.  The trial court declared a mistrial and signed an order to that effect on March 2, 2022.

On March 24, 2022, the State reindicted Appellant for aggravated robbery.  Appellant subsequently filed a motion to dismiss alleging, among other things, that his right to a speedy trial had been violated.  On March 30, 2022, after an evidentiary hearing, the trial court denied Appellant's motion; the trial court signed its order denying the motion on April 1, 2022.  Appellant's second trial commenced on October 11, 2022, and a jury found him guilty of aggravated robbery.  This appeal followed.

## II.  *Standards of Review*

### A.  *Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the

---

[1]We note that a transcript of the first trial is not contained in the reporter's record that was provided to this court because it was not requested by Appellant; therefore, we do not know with certainty the date that Appellant's first trial began.  However, we discern from the trial court's declaration of a mistrial on March 2, 2022, Appellant's motion to dismiss, the transcript of the trial court's hearing following the mistrial, and the parties' briefs that the first trial began on February 28, 2022.

standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative

as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct jury charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. When, as in this case, the trial court's charge authorized the jury to convict the defendant on more than one theory, the jury's verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the charge. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992)).

6

B.  *Speedy Trial*

A trial court's ruling on a speedy-trial complaint is reviewed under a bifurcated standard of review.  *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014); *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)).  We review a trial court's determination of questions of law de novo to determine whether there is sufficient presumptive prejudice to proceed to a *Barker*[2] analysis and the weighing of the *Barker* factors; we review factual issues under an abuse of discretion standard. *Gonzales*, 435 S.W.3d at 809; *Cantu*, 253 S.W.3d at 282.

A review of the *Barker* factors necessarily involves factual determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal question." *Cantu*, 253 S.W.3d at 282 (alterations in original) (quoting *Zamorano*, 84 S.W.3d at 648 n.19).  Under an abuse of discretion standard, we view all of the facts in the light most favorable to the trial court's ruling.  *Id.*  We defer not only to a trial court's resolution of disputed facts; we also defer to the reasonable inferences drawn from those facts.  *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).  The trial court may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so.  *Id.* at 728.

We review a trial court's ruling on a motion to dismiss for the alleged violation of a speedy trial "in light of the arguments, information, and evidence that was available to the trial court *at the time it ruled*." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (emphasis added).  Where, as here, the trial court denied the motion to dismiss, we presume that the trial court resolved any factual disputes or credibility determinations in favor of its ruling, and we defer to the implied findings

---

[2]*See Barker v. Wingo*, 407 U.S. 514 (1972) (holding that a court's evaluation of a speedy-trial complaint includes a consideration of the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice suffered by the defendant.).

7

of fact that the record supports. *See Cantu*, 253 S.W.3d at 282 (citing *Zamorano*, 84 S.W.3d at 648). In the end, we must uphold the trial court's ruling if it finds support in the record and is correct under any applicable theory of law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

## III. *Analysis*

Appellant raises two issues on appeal: (1) the trial court erred when it denied Appellant's motion to dismiss because his right to a speedy trial was violated; and (2) the evidence is insufficient to support Appellant's conviction because it does not show that he was acting "in the course of committing theft" during the commission of the robbery. We first address Appellant's sufficiency argument.

### A. *Sufficiency of the Evidence*

Appellant contends that the evidence presented at trial is insufficient to show a "nexus between the alleged theft and the alleged assault." Specifically, Appellant alleges that the following evidence supports his arguments: (1) Brady attacked "the suspects," causing them to abandon their plan to rob Brady and flee; (2) as Appellant and his companion fled, Brady chased "the man carrying the firearm," creating an intervening act which "broke the chain of events so it was no longer one contemporaneous criminal episode"; and (3) "Brady was wearing a pellet gun that appeared to be a firearm." We conclude that there is sufficient evidence to support the jury's finding of guilt.

As is relevant to this appeal, a person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. PENAL § 29.02(a)(1). Proof of a completed theft is not required to establish the offense of robbery. *See Bustamante v. State*, 106 S.W.3d 738, 740–41 (Tex. Crim. App. 2003). The offense is elevated to aggravated robbery if the person causes serious bodily injury to another or uses or exhibits a deadly weapon during the

commission of the robbery offense. PENAL § 29.03(a)(1), (2). A firearm is a deadly weapon per se. *Id.* § 1.07(a)(17)(A) (West Supp. 2023).

The reindictment alleged that, while in the course of committing theft and with the intent to obtain and maintain control of Brady's property, Appellant (1) intentionally, knowingly, and recklessly caused serious bodily injury to Brady by shooting him with a firearm, or (2) intentionally, knowingly, and recklessly caused bodily injury to Brady by shooting him and that Appellant used or exhibited a deadly weapon—a firearm—during the commission of the offense. In this case, Appellant limits his argument solely to challenging the sufficiency of the evidence as to the temporal relationship of the theft and Appellant's assault. Therefore, we address whether the jury could have rationally concluded that Appellant committed the assault *in the course of committing theft*. *See* PENAL § 29.02(a)(1).

Under the robbery statute, the legislature "assigned a broad meaning to the term, 'in the course of committing theft,' to encompass virtually any act occurring immediately before, during, or after a theft." *See Knott v. State*, 513 S.W.3d 779, 793 (Tex. App.—El Paso 2017, pet. ref'd) (citing *Sorrells v. State*, 343 S.W.3d 152, 157–58 (Tex. Crim. App. 2011)). In this regard, the Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." PENAL § 29.01(1).

In *White v. State*, the appellant claimed that he abandoned his plan to steal from the victim and was attempting to escape when the injury occurred. 671 S.W.2d 40, 41 (Tex. Crim. App. 1984). As a result, he argued, there was insufficient evidence to support his conviction for aggravated robbery because there was "no evidence" that he shot the victim with the intent to obtain or maintain control of the property. *Id.* The Court of Criminal Appeals held that "violence accompanying an escape immediately subsequent to an attempted theft can constitute robbery," and

concluded that sufficient evidence existed to support the appellant's conviction. *See id.* at 42–43. In so holding, the court noted that "[t]he element 'intent to obtain or maintain control of the property' in [Section 29.02] 'deals with the robber's state of mind regarding the property' involved in the theft or attempted theft, and not his state of mind in the assaultive component of the offense of aggravated robbery." *Id.* at 42 (quoting *Ex parte Santellana*, 606 S.W.2d 331, 333 (Tex. Crim. App. 1980)).

In *Oggletree v. State*, the appellant fled as he committed the theft but returned, while brandishing a knife, to assist in his accomplice's escape. The First Court of Appeals addressed whether the appellant's "knife-wielding conduct" constituted "immediate flight" from the theft, meaning that he was acting within a single continuous criminal episode during his "immediate flight" or escape, or whether the theft and the use of the knife occurred during two, separate incidents. 851 S.W.2d 367, 369 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). The court held that the appellant engaged in one continuous, criminal episode and that there was sufficient evidence that the appellant committed aggravated robbery in this circumstance because (1) the appellant remained in the vicinity of the theft when he crossed the parking lot and returned; (2) no intervening circumstances existed to create a series of incidents rather than one continuous episode; and (3) the appellant's actions were committed during the "immediate flight" from the theft. *Id.* at 369–70.

Here, the evidence shows that (1) Appellant fled after he failed to steal Brady's backpack and (2) upon being pursued by Brady, Appellant used a firearm and shot Brady in an effort to aid both his and his accomplice's immediate flight from the scene of the theft. *See White*, 671 S.W.2d at 42. Brady testified that when Appellant and another individual threatened him at gunpoint in an attempt to steal his backpack, he "backhanded" Appellant with his fist, which prompted them to "run away." Because Brady believed that Appellant intended to shoot him, he consciously chose to chase Appellant to "get the gun from [Appellant] before [he]

10

could [be] shot." Brady testified that he only pursued Appellant for "a couple" of steps before Appellant shot him.

Other witnesses corroborated Brady's version of events. Steven Smith testified that while he was walking in the park, he saw two individuals attempting to gain control of a bag from a "kid" who was near the park's benches. Smith then heard several gunshots and a vehicle "take off" from the park shortly thereafter. Later when Sergeant Ball arrived, he found Brady lying on the ground several yards away from the park benches. From this evidence, a rational jury could have concluded that the shooting occurred shortly after the attempted theft, that no significant break in the chain of events existed before Appellant fled, and that Appellant was acting in the commission of a theft when he committed an act of "violence accompanying an escape immediately subsequent to an attempted theft" by using a firearm to shoot and inflict serious bodily injury to Brady while he and his accomplice fled. *See White*, 671 S.W.2d at 41–42.

Additionally, Appellant's arguments that Brady's mere possession of a "pellet gun," which suggests that Brady "attacked" Appellant after the robbery, thereby "discontinu[ing] the criminal episode," finds scant support in the record. Brady testified that the pellet gun was in his waistband when he first met Appellant at the picnic table. There is no indication in the record as to whether the pellet gun was visible to Appellant during their interaction, and Brady testified that he never removed the pellet gun from his pants during the altercation. Granted, other evidence contradicts some of Brady's statements.

Sergeant Ball recovered Brady's backpack, the marihuana, and parts of the pellet gun near the picnic table, rather than on Brady's person. Further, Detective Rodriguez testified that when she interviewed Brady after the incident, Brady told her that he hit Appellant with the pellet gun, not with his fist, and that he took the backpack off as he was being robbed. However, even if the jury believed that Brady

11

"attacked" Appellant by chasing him with a pellet gun after the failed theft, this act alone does not negate Appellant's culpability—his intent to rob Brady—nor does it constitute an intervening event between the theft and Appellant's act of shooting Brady. Rather, the evidence in the record indicates that the shooting occurred both in close temporal and spatial proximity to Appellant's commission of the theft; thus, Appellant's actions constituted a singular continuous criminal episode. *See Oggletree*, 851 S.W.2d 369–70.

In this case, as in all cases, the jury may believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As the trier of fact, it is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 326; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Therefore, when the evidence supports conflicting inferences, we presume that the jury, as the factfinder, resolved any conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778.

We have reviewed the evidence in the light most favorable to the jury's verdict, and we conclude that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of aggravated robbery. Accordingly, we overrule Appellant's second issue on appeal.

B. *Speedy Trial*

In Appellant's first issue, he contends that the trial court erred when it denied his motion to dismiss on speedy-trial grounds. We disagree.

12

The Sixth Amendment to the United States Constitution, made applicable to state criminal prosecutions through the Fourteenth Amendment, provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI; *see also Gonzales*, 435 S.W.3d at 808. To trigger a speedy-trial analysis, the defendant must make an initial showing that the "interval between [the] accusation and [the date of] trial has crossed the threshold [that separates] ordinary from 'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). If the defendant makes a threshold showing of presumptive prejudice, courts must then consider and weigh each of the *Barker* factors. *Id.* (citing *Munoz v. State*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)).

After a person is arrested or charged, a speedy-trial complaint is triggered by the passage of time that is deemed to be unreasonable enough under the circumstances to be "presumptively prejudicial." *Barker*, 407 U.S. at 530; *United States v. Marion*, 404 U.S 307, 313 (1971). Post-accusation delay that approaches one year from the date the person is arrested or charged until trial commences "marks the point at which courts deem the delay [to be] unreasonable enough to trigger the *Barker* [i]nquiry." *Doggett*, 505 U.S. at 652 n.1.

If the defendant makes this threshold showing of presumptive prejudice, courts then weigh the *Barker* factors and balance their respective weights in light of the conduct of both the prosecution and the defendant to determine whether an accused has been denied his right to a speedy trial. *Barker*, 407 U.S. at 530; *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017); *Cantu*, 253 S.W.3d at 28; *Dragoo*, 96 S.W.3d at 313. The *Barker* factors focus on (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant effectively asserted his speedy-trial right, and (4) the prejudice to the defendant caused by the delay. *Barker*, 407 U.S. at 530. Because the factors are related, no single factor is necessary or

13

sufficient to establish a violation of the defendant's right to a speedy trial. *Barker*, 407 U.S. at 530, 533; *Cantu*, 253 S.W.3d at 281; *Dragoo*, 96 S.W.3d at 313. Instead, the four factors "must be considered together along with any other relevant circumstances" to determine whether a defendant has been deprived of the right to a speedy trial. *Cantu*, 253 S.W.3d at 281.

In balancing the parties' respective conduct, the State has the burden to justify the length of delay, while the defendant has the burden to prove that he asserted his right and was prejudiced. *Cantu*, 253 S.W.3d at 280 (citing *Barker*, 407 U.S. at 531); *see Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973). The defendant's burden of proof on factors three and four "varies inversely" with the State's degree of culpability for the delay. *Cantu*, 253 S.W.3d at 280 (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

The only possible remedy for a violation of the right to a speedy trial is the dismissal of the charging instrument with prejudice. *Strunk v. United States*, 412 U.S. 434, 440 (1973); *Cantu*, 253 S.W.3d at 281. Because dismissal of the charges is an extreme remedy, courts should apply and balance the *Barker* factors "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and *asserted* interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281 (emphasis added). This is so because "[t]he constitutional right is that of a speedy trial, not [the] dismissal of the charges." *Id.*

An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial "must do so in light of the arguments, information, and evidence that was available to the trial court *at the time it ruled*." *Dragoo*, 96 S.W.3d

14

at 313 (emphasis added).  Accordingly, for purposes of our analysis, we first address the time period from the date that Appellant was arrested until the date the trial court ruled on Appellant's motion to dismiss, because this is the only information that the trial court had before it when it ruled on the motion.  *See id.*  If necessary, we will then consider the possible effect, if any, of the delay that occurred from the date the trial court ruled on the motion until the date that Appellant's second trial commenced.

### 1.  *Presumptive Prejudice and the Length of the Delay*

"The length of delay is a double inquiry: A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length."  *Hopper*, 520 S.W.3d at 924.  The delay is measured from the time the defendant is arrested or formally accused until the time of trial or the defendant's demand for a speedy trial.  *Marion*, 404 U.S. at 313; *Shaw*, 117 S.W.3d at 889; *Zamorano*, 84 S.W.3d at 648.  In the interest of justice, we calculate the length of the delay that encompasses the greatest possible period of time.  *See State v. Davis*, 549 S.W.3d 688, 698 (Tex. App.—Austin 2017, no pet.).

Although the Supreme Court has held that, generally, a delay approaching one year is sufficient to trigger a speedy-trial inquiry, the precise length needed is dependent upon the particular facts of the case.  *See Doggett*, 505 U.S. at 652 n.1.  For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."  *Barker*, 407 U.S. at 531.  Additionally, "the presumption that pretrial delay has prejudiced the accused intensifies over time."  *Doggett*, 505 U.S. at 652.  Thus, the longer the delay beyond the triggering length, the more prejudicial the delay can be to the defendant.  *Zamorano*, 84 S.W.3d at 649.

Here, Appellant was arrested on January 23, 2020. While his first trial did commence, the trial court, upon Appellant's request, declared a mistrial on March 2, 2022. Subsequently, Appellant filed his motion to dismiss on March 24, 2022, based, in part, for an alleged violation of his right to a speedy trial. The trial court held an evidentiary hearing and ruled on Appellant's motion on March 30, 2022—which is approximately a twenty-six-month delay from the date of Appellant's arrest until the trial court ruled on Appellant's motion. We note that Appellant did *not* assert a right to a speedy trial, nor did he file an additional motion to dismiss for any alleged violation of this right, after the trial court ruled on the above referenced motion. As such, the additional period that accrued between the trial court's ruling and the commencement of Appellant's second trial is not relevant to our review of the trial court's decision because the trial court did not have an opportunity to address this additional time prior to the filing of this appeal. *See Dragoo*, 96 S.W.3d at 313.

The State concedes that the length of the delay in this case is sufficient to trigger a review of Appellant's speedy-trial complaint. Here, the complained-of period of time exceeds the minimum needed to trigger review of a speedy-trial complaint and, thus, this factor, generally, weighs heavily against the State. *See Zamorano*, 84 S.W.3d at 649 ("Because the length of the delay stretched well beyond the bare minimum needed to trigger judicial examination of the [speedy-trial] claim, this factor—in and of itself—weighs heavily against the State."); *see also Barringer v. State*, 399 S.W.3d 593, 600 (Tex. App.—Eastland 2013, no pet.). While the delay in the commencement of Appellant's first trial may on its face appear to be lengthy, all relevant factors must still be weighed and balanced together. *See Cantu*, 253 S.W.3d at 281. The reasons for a delay will be reviewed in context with the other factors, including the lack of Appellant's assertion of his right to

16

speedy trial and the extent to which Appellant was prejudiced, if at all, as a result of the delay. *See Barker*, 407 U.S. at 530.

### 2. *The Reasons for the Delay*

The second *Barker* factor requires that the trial court review the State's justification for the delay. *Barker*, 407 U.S. at 531. Under *Barker*, "different weights should be assigned to different reasons." *Munoz*, 991 S.W.2d at 822 (quoting *Barker*, 407 U.S. at 531). Deliberate attempts to delay the trial should be weighed heavily against the State, while a valid reason for an appropriate delay, such as an unavailable witness, should not. *Id.* A more neutral reason, such as official negligence or overcrowded trial court dockets, is afforded less weight but, nevertheless, may be weighed against the State, because the ultimate responsibility for proceeding to trial expeditiously rests with the State. *Barker*, 407 U.S. at 531. The State has the burden to provide a reason that would excuse the delay, and "in light of a silent record or one containing reasons [that are] insufficient to excuse the delay, it must be presumed that no valid reason for the delay existed." *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). However, any delay that is caused by or attributable to the defendant or defendant's trial counsel is generally weighed heavily against the defendant. *See Munoz*, 991 S.W.2d at 822.

Here, the State offered numerous justifications for the first trial's delay at the hearing on Appellant's motion to dismiss. The State argued that the initial delay of approximately eighteen months from Appellant's arrest on January 23, 2020, until August 9, 2021, was primarily attributable to delays caused by and related to the COVID-19 pandemic and the emergency orders issued by the Texas Supreme Court. *See First Emergency Order Regarding COVID-19 State of Disaster*, 596 SW.3d 265 (Tex. 2020); *see also Fortieth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 911, 912 (Tex. 2021). While a delay due to emergency orders does not supersede a constitutional mandate, we note that other courts have held that

a "[d]elay caused by the onset of a pandemic cannot be attributed as fault to the State." *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.); *but see Lovelace v. State*, 654 S.W.3d 42, 49 (Tex. App.—Amarillo 2022, no pet.) ("[W]hile the State's stated reason for the delay is a neutral reason, there existed an option that might have allowed the trial to have been held even during a pandemic."). We agree with the holding in *Conatser*. As such, this reason neither weighs in favor of nor against the State.

A further delay of fifteen days occurred because Appellant and his parents contracted the COVID-19 virus. As a result, Appellant requested a continuance on August 5, 2021, which the trial court granted; the trial date was thereafter reset to August 24, 2021. Another fourteen-day delay occurred, necessitating another request for a continuance by Appellant, that was based on a religious observance for Appellant's trial counsel; the trial date was again moved from September 13, 2021 to September 27, 2021. At the hearing on the motion, Appellant acknowledged that these delays were a result of an agreed continuance by the parties and are thus attributable to Appellant. As such, this cumulative twenty-nine-day delay based on Appellant's requested continuances does not weigh against the State.

The State also requested, and was granted, a continuance from the October 11, 2021, trial date because of the unavailability of certain witnesses. The trial court then set a new trial date of November 29, 2021—resulting in a one month and eighteen-day delay. The unavailability of a necessary witness is a justifiable basis for a delay. *Barker*, 407 U.S. at 531. Thus, this reason weighs in favor of the State.

We note that other delays occurred. The cause of each delay was likely known to the trial court at the time of its ruling, however, the reasons for these delays were not expressly discussed or addressed at the hearing on Appellant's motion to dismiss, nor is it clear from the record which party, if any, requested a delay or a continuance. These "other" delays are: (1) a twenty-seven-day delay pursuant to the trial court's

order dated August 17, 2021 which reset the trial from August 24, 2021 to September 13, 2021; (2) a fourteen-day delay pursuant to the trial court's order dated September 28, 2021, which reset the trial from September 27, 2021, to October 11, 2021; and (3) a two-month delay from November 29, 2021 to February 1, 2022.

The State argues on appeal that some of the aforementioned delays were caused by scheduling conflicts associated with the trial court. Specifically, the State argues that the fourteen-day delay from September 27, 2021, to October 11, 2021, was because the trial court presided over another case that proceeded to trial. Appellant does not offer an alternative explanation for these delays, and the record is silent as to the specific reason(s) for the aforementioned delays other than the excessive number of cases pending on the trial court's docket; however, "crowded" trial court dockets and the lack of public resources to accommodate the criminal justice system do not necessarily justify a delay. *See Santibanez v. State*, 717 S.W.2d 326, 330–31 (Tex. Crim. App. 1986). Accordingly, these delays weigh against the State. *See Barker*, 407 U.S. at 531; *Turner*, 545 S.W.2d at 137–38 ("[I]n light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for the delay existed.").

Appellant contends that the "overall" cause for the delay in prosecuting his case was due to the State's negligence, and he points to the mistrial in support of his contention. However, at the hearing on Appellant's motion, the trial court found that "[a] mistake was made . . . [the court] [does not] believe there's any intentional act at all from anybody." Moreover, there is no evidence in the record suggesting that the State deliberately attempted to delay the prosecution of Appellant's case. As such, this factor weighs only slightly against the State. *See Dragoo*, 96 S.W.3d at 314 (explaining that any delay weighs against the State if not justified but that, to weigh heavily, there must be evidence of "a deliberate attempt on the part of the State to prejudice the defense"); *see also Barringer*, 399 S.W.3d at 600.

19

### 3. *Defendant's Assertion of His Right to a Speedy Trial*

A defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant was deprived of that right. *Barker*, 407 U.S. at 531–32. It is well settled that the State bears the burden to promptly bring the defendant to trial, but the defendant nonetheless has the burden to prove that he effectively *asserted* his right to a speedy trial. *Munoz*, 991 S.W.2d at 825; *Davis*, 549 S.W.3d at 704; *Barringer*, 399 S.W.3d at 599. A demand for a speedy trial should be an unambiguous assertion that is clear enough to convey to the trial court or the State that the defendant is asserting this right. *Davis*, 549 S.W.3d at 704 (citing *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013)); *Bailey v. State*, 885 S.W.2d 193, 201 (Tex. App.—Dallas 1994, pet. ref'd). Although it does not necessarily constitute a waiver, the defendant's failure to assert this right indicates both a lack of desire for a speedy trial and a lack of prejudice. *See Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992); *see also Dragoo*, 96 S.W.3d at 314. As the length of the delay increases, a defendant who is diligent and wishes to have a speedy trial is, and should be, more likely to take some action to assure that his trial commences promptly; thus, "inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at 314 (quoting George E. Dix & Robert O. Dawson, 42 *Texas Practice Series: Criminal Practice & Procedure* § 23.40 (2d ed. 2001)).

Importantly, "[t]he constitutional right is that of a speedy trial, not [to the] dismissal of the charges." *Cantu*, 253 S.W.3d at 281. A request that the trial court dismiss the pending charges based on an alleged speedy-trial violation, as opposed to requesting a prompt trial setting, attenuates the strength of a speedy-trial complaint because it creates an inference that the defendant prefers no trial at all, rather than a speedy trial. *Id.*; *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983); *Stiles v. State*, 596 S.W.3d 361, 367–68 (Tex. App.—

Houston [14th Dist.] 2019, pet. ref'd). As such, a defendant who moves for a dismissal of the pending charges rather than and *before* he requests a speedy trial must provide cogent reasons for this strategy. *Cantu*, 253 S.W.3d at 283.

In this case, Appellant first asserted his right to a speedy trial when he filed his motion to dismiss on March 24, 2022, twenty-six months after he was arrested and twenty-two days after the trial court declared a mistrial. Notably, Appellant's assertion of his right first came in the form of a motion to dismiss instead of a motion for speedy trial. This filing indicates that Appellant was not pursuing a speedy trial; rather, he was insisting that a trial never occur. *See Cantu*, 253 S.W.3d at 281; *Stiles*, 596 S.W.3d at 367–68. As such, this factor weighs heavily against Appellant because Appellant's actions only demonstrate his desire to obtain a dismissal of the pending charges and to avoid a trial altogether, rather than to insist on a speedy trial. *See Barringer*, 399 S.W.3d at 601–02.

Although circumstances may exist in which filing a motion to dismiss *before* requesting a speedy trial is warranted, such circumstances are not present in this case. As we explain below, there is nothing in the record to indicate that Appellant was prejudiced in any substantive manner, if at all, by the delay. Even when viewed in the light most favorable to the trial court's ruling, neither Appellant nor the trial court could have reasonably inferred that filing a motion to dismiss before moving for a speedy trial was warranted here.

### 4. *Prejudice to Appellant*

The final factor that we must consider requires that we determine whether and to what extent the defendant suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 532. We assess the weight of any prejudice in light of the interests that the right to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the defendant's anxiety and concern; and (3) to limit the possibility that the defendant's defense will be impaired. *Id.* Of these factors,

"the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Here, Appellant did not allege or present any evidence of oppressive pretrial incarceration or pretrial anxiety or concern to the trial court. Thus, we direct our attention to the final and most important factor—the extent to which the defendant's defense was impaired. *See Dragoo*, 96 S.W.3d at 315 (holding that a particular claim of prejudice may not support an appellate court's determination of the prejudice factor when "appellant made no such argument to the trial court").

Under this factor, a defendant generally has the burden to show that he suffered some prejudice; however, he need not necessarily make a showing of actual prejudice. *Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016). "We assess prejudice according to a sliding scale." *Hopper v. State*, 495 S.W.3d 468, 479 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017). Affirmative proof of particularized prejudice is not essential in every case because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655; *see Shaw*, 117 S.W.3d at 890. On the other hand, the presumption of prejudice will be extenuated by the defendant's acquiescence in the delay. *Dragoo*, 96 S.W.3d at 315; *see Davis*, 549 S.W.3d at 708 ("In cases with excessively lengthy delays to which the defendant does not acquiesce, an inference of actual prejudice may arise. Such inference of prejudice does not arise here because . . . Davis acquiesced to the trial delay. . . ." (citations omitted)).

Appellant argues that he suffered prejudice because the State had the opportunity to cross-examine Appellant's witnesses during the first trial which "revealed [Appellant's] defensive strategy" and that "[t]he State also had an opportunity to workshop its case before a jury, and it gained insight into how it could reindict [Appellant]." However, Appellant's primary "prejudice" arguments do not

focus on any potential negative effects from the delay, such as dimming memories or loss of exculpatory evidence, but rather on the alleged prejudice that resulted from the first trial and the subsequent mistrial. *See Doggett*, 505 U.S. at 654.

The State counters that both parties benefitted from the mistrial because Appellant was also able to preview the prosecution's evidence and strategy during the first trial. During the hearing on Appellant's motion, the trial court made an effort to remedy any potential prejudice stemming from the mistrial by ordering that a transcript of the first trial be prepared for and delivered to Appellant's trial counsel, which he could then use in subsequent hearings. Moreover, Appellant's reindictment was not prejudicial. In fact, the reindictment did not change the nature of the charged offense; it merely added an additional manner and means of committing the same offense. *See* PENAL §§ 29.02–.03.

Appellant's trial counsel also argued during the hearing on Appellant's motion that there was a possible loss of evidence through phone records or Snapchat's policy regarding the preservation of user data. However, Appellant agreed with the State that the time needed to recover some of the evidence, such as the Snapchat records, had already elapsed before Appellant was arrested, therefore negating some of the alleged prejudice due to the loss of evidence. Appellant also made no showing of any actual prejudice in the form of lost exculpatory evidence. The State indicated at the hearing that they had provided Appellant's trial counsel with all the evidence that Appellant claimed was "missing" on the day the mistrial was declared. *Shaw*, 117 S.W.3d at 890–91. Accordingly, because Appellant has failed to demonstrate prejudice, this factor weighs against a finding of a violation of Appellant's right to a speedy trial.

### 5. *Balancing the Factors*

We must give due deference to a trial court's factual findings and any reasonable inferences that find support in the record. Based on the record before us,

when we consider, weigh, and balance all of the relevant factors together, we cannot say that Appellant's right to a speedy trial was violated. *See Barker*, 407 U.S. at 534–36; *Munoz*, 991 S.W.2d at 829–30; *Davis*, 549 S.W.3d at 709–10; *Jones*, 168 S.W.3d at 352; *Smith*, 76 S.W.3d at 553–54. Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to dismiss. *See also Lowe v. State*, No. 11-15-00094-CR, 2017 WL 2588210, at *6–7 (Tex. App.— Eastland Apr. 28, 2017, no pet.) (mem. op., not designated for publication) (a thirty-five-month delay did not result in a speedy-trial violation; the defendant also filed a motion to dismiss, not a motion for speedy trial, and thus made no effort to assert a speedy-trial right); *Torres v. State*, No. 11-13-00172-CR, 2015 WL 4438051, at *3 (Tex. App.—Eastland July 16, 2015, no pet.) (mem. op., not designated for publication) (a seven-year delay between indictment and the commencement of trial did not result in a speedy-trial violation); *Barringer*, 399 S.W.3d at 600–02 (an eight-year delay did not constitute a speedy-trial violation; the defendant also failed to move for a dismissal for eight years and thus any prejudice was attenuated by the defendant's failure to assert a speedy-trial right).

### 6. *The Second Trial*

We note that both Appellant and the State, in their respective analyses of the *Barker* factors, refer to the time period between the trial court's ruling on Appellant's motion and the date Appellant's second trial commenced. As we have said, this period of time is of no consequence.

In general, a speedy-trial delay is measured from the time the defendant is arrested or formally accused until the date of his trial *or* his demand for a speedy trial. *Marion*, 404 U.S. at 313; *Shaw*, 117 S.W.3d at 889; *Zamorano*, 84 S.W.3d at 648. Further, because we review a trial court's ruling on a motion to dismiss for want of a speedy trial based on the information and evidence that was available to the trial court *at the time it ruled*, in this case, we calculate the delay by considering

the difference between the date of Appellant's arrest and the date of the hearing on Appellant's motion to dismiss—which is approximately a twenty-six-month delay. *Dragoo*, 96 S.W.3d at 313; *see also Sample v. State*, 653 S.W.3d 287, 293 (Tex. App.—Austin 2022, pet. ref'd).

As we have discussed above, Appellant did not assert his right to a speedy trial, nor did he file an additional motion to dismiss based on the same violation of this right, after the trial court ruled on the original motion to dismiss. Thus, in making its decision, the trial court did not have the opportunity to consider or address this "additional delay" argument. *See Dragoo*, 96 S.W.3d at 313; *Sample*, 653 S.W.3d at 292–93. However, even if we were to consider this argument, our conclusion would be the same—Appellant's right to a speedy trial was not violated in this case.

Accordingly, we overrule Appellant's first issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

February 29, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.