**Opinion filed February 28, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00044-CR
_____

## CHARLES EDWARD BARRINGER, JR., Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Throckmorton County, Texas**

**Trial Court Cause No. 1107**

**O P I N I O N**

The grand jury indicted Charles Edward Barringer, Jr. for the offense of indecency with a child. He maintained that the State denied him his right to a speedy trial and he filed a motion to dismiss the indictment. The trial court denied his motion. After the trial court denied the motion, Appellant pleaded guilty. The trial court deferred a finding of guilt, placed Appellant on community supervision for eight years, and assessed a fine of $1,500. We affirm.

## I. Background

In November 2001, the Throckmorton County sheriff's office began investigating allegations that Appellant sexually assaulted a child. Sheriff John Riley contacted Appellant several times, but Appellant never agreed to go to the sheriff's office to discuss the allegations. Sheriff Riley obtained an arrest warrant for Appellant's arrest in connection with the allegations.

During the holidays, Appellant went to Michigan to visit family and authorities arrested him there on December 27, 2001, for unrelated criminal charges. Three days later, authorities in Lenawnee County, Michigan, notified the Throckmorton County sheriff's office that they had Appellant in custody; that they were extraditing him to Bay City, Michigan; and that a hold could be placed on Appellant with Bay City authorities. Accordingly, Sheriff Riley placed a hold on Appellant. Appellant attempted to post bond in Bay City, but learned that a warrant had been issued for his arrest in Texas and that he would be held for extradition.

On January 10, 2002, because Throckmorton County had not indicted Appellant, Sheriff Riley sent a letter in which he instructed the Bay City sheriff's office to release the Throckmorton County hold on Appellant. Appellant posted bond in Michigan on March 6, 2002.

On March 7, 2002, the grand jury in Throckmorton County returned an indictment by which it formally charged Appellant with indecency with a child by contact. The charges were originally investigated in November 2001. Meanwhile, Appellant pleaded guilty to the Michigan charges and was placed on probation for three years.[1]

Sometime in 2002, after the grand jury returned the indictment, Appellant called the district attorney's office for Throckmorton County and asked whether there were any charges pending against him. Investigator Luke Griffin informed Appellant that he had been indicted and that a warrant had been issued for his arrest. The investigator suggested that Appellant surrender himself to police instead of "getting picked up in the middle of the night and hav[ing] to stay in jail a day or two before they set bond or something." Appellant did not turn himself in to the authorities.

Eventually, in 2010, someone saw Appellant in Throckmorton County when he returned to visit his father. They notified the authorities and Sheriff Riley arrested Appellant at his father's house.

---

[1]We cannot tell from the record what the nature of the Michigan charges were.

Three months after his arrest, Appellant filed a motion in which he asked the trial court to set aside the indictment because the eight-year delay violated his right to a speedy trial. At a hearing on the motion, Appellant testified that he had called the Throckmorton County sheriff's office three times between 2002 and 2004 to check on the status of the investigation. He testified that a woman told him on all three occasions that Sheriff Riley would return his call, but he did not. Investigator Griffin testified, however, that he informed Appellant of the charges in 2002 and suggested that he surrender. Investigator Griffin admitted that he was testifying from personal memory and had no record of the phone call.

## II. Speedy Trial

The Sixth Amendment to the Constitution of the United States affords all criminal defendants the right to a speedy trial. U.S. CONST. amend. VI. This right was made applicable to state criminal prosecutions by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). The speedy trial right attaches when a person is arrested or charged. *United States v. Marion*, 404 U.S. 307, 320 (1971). The only possible remedy for a violation of the right to a speedy trial is to dismiss the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973).

To determine whether an accused has been denied his right to a speedy trial, courts balance the conduct of both the prosecution and the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). We apply the *Barker* factors to evaluate (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his speedy trial right, and (4) the prejudice caused by the delay. *Barker*, 407 U.S. at 530. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id.*; *Dragoo*, 96 S.W.3d at 313.

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker*, 407 U.S. at 531; *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.*

3

A speedy trial claim is triggered by a passage of time that is unreasonable enough under the circumstances to be "presumptively prejudicial." *Marion*, 404 U.S. at 313. Post-accusation delay that approaches one year "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Once triggered, courts analyze a "speedy trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Cantu*, 253 S.W.3d at 281 (quoting *Barker*, 407 U.S. at 530). No single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Instead, the factors are related, and we consider them "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281. In sum, these factors have no "talismanic qualities, thus courts must 'engage in a difficult and sensitive balancing process.'" *Zamorano*, 84 S.W.3d at 648.

We review the trial court's ruling on a speedy trial issue under a bifurcated standard of review. *Id.* As in the context of a motion to suppress, we review legal issues de novo, but defer to the trial court's resolution of factual issues. *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005). We view all of the evidence in the light most favorable to the trial court's ultimate ruling. *Zamorano*, 84 S.W.3d at 648. Under this standard, we defer not only to a trial court's resolution of disputed facts, but we also defer to the reasonable inferences drawn from those facts. *Kelly*, 163 S.W.3d at 726. "Although the trial court deserves deference even when credibility is not in issue, deference is especially appropriate when credibility is involved." *Id.* at 727. In fact, "the factfinder is empowered, on the basis of credibility and demeanor evaluations, to completely disregard a witness's testimony, even if that testimony is uncontroverted." *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

The trial court denied Appellant's motion to dismiss the indictment for a speedy trial claim, so we presume that the trial judge resolved any factual disputes in favor of the State. *Zamorano*, 84 S.W.3d at 648. We will defer to the implied findings of fact that the record supports. *Id.*

4

*A. The Length of the Delay*

Appellant was indicted on March 7, 2002, and arrested more than eight years later. The trial court held a hearing on Appellant's motion to set aside the indictment on December 7, 2010. The State concedes that the eight-year delay is sufficient to trigger further examination of Appellant's claim. Furthermore, this period of time exceeds the minimum needed to trigger review of a speedy trial claim and, thus, weighs heavily against the State. *See Zamorano*, 84 S.W.3d at 649 ("Because the length of the delay stretched well beyond the bare minimum needed to trigger judicial examination of the [speedy trial] claim, this factor—in and of itself—weighs heavily against the State.").

*B. The Reason for the Delay*

When assigning weight to the reasons for delay that is given by the government, different reasons deserve different weights. *Barker*, 407 U.S. at 531. "Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." *Doggett*, 505 U.S. at 656–57. "[T]he burden of excusing the delay rests with the State and . . . in light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed." *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). An intentional or "deliberate attempt to delay the trial" weighs heavily against the government, and a valid reason for the delay does not weigh against the government at all because it justifies the delay. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (quoting *Barker*, 407 U.S. at 531). A "more neutral reason such as negligence or overcrowded courts should be weighted less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

Appellant argued to the trial court that the State "just kept their ear to the ground, and if anything, [Appellant] fell through the cracks and this was the result of negligence." The State concedes that it was negligent by failing to take any steps to notify Appellant of the pending charges or bring him to trial and that this factor weighs against it, although "not as heavily as would action by the State to deliberately delay the trial." Appellant neither alleged nor offered any evidence that the State's conduct rose above negligence. This factor weighs against the State, although not heavily. *See Dragoo*, 96 S.W.3d at 314 (explaining that any delay weighs

against the State if not justified but that, to weigh heavily, there must be evidence of "a deliberate attempt on the part of the State to prejudice the defense").

### C. The Defendant's Assertion of His Right

A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant was deprived of that right. *Barker*, 407 U.S. at 531. "A defendant still is responsible for asserting or demanding his right to a speedy trial." *Munoz*, 991 S.W.2d at 825. Although it is not a waiver, failing to assert the right indicates a lack of desire for a speedy trial. *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). It also indicates a lack of prejudice. *Dragoo*, 96 S.W.3d at 314. This is because, as the delay becomes longer, a defendant who wishes to have a speedy trial is more likely to take some action to obtain it. *Dragoo*, 96 S.W.3d at 314. "Thus[,] inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at 314 (quoting George E. Dix & Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 23.40 (2d ed. 2001)). When a defendant is unaware of the indictment or warrant, however, we consider whether and how the defendant asserted his speedy trial right once he became aware. *See Doggett*, 505 U.S. at 653–54 (explaining that a defendant cannot be taxed for failing to invoke his speedy trial right when unaware of the indictment); *Phillips v. State*, 650 S.W.2d 396 (Tex. Crim. App. 1983).

A request that the court dismiss the charges for a speedy trial violation, rather than a request for a prompt trial setting, attenuates the strength of a speedy trial claim because it indicates a desire to avoid trial rather than to obtain a speedy trial. *Phillips*, 650 S.W.2d at 401; *Orosco v. State*, 827 S.W.2d 575, 577 (Tex. App.—Fort Worth 1992, pet. ref'd). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281. In some cases, a request to dismiss is warranted if defense counsel legitimately felt that the long delay caused enough prejudice that requesting a prompt trial is no longer in the defendant's best interest. *Compare Zamorano*, 84 S.W.3d at 651 n.40 (motion to dismiss may alert the court and the State both of the delay and a defendant's lack of acquiescence instead of an attempt to escape trial completely), *with State v. Guerrero*, 110 S.W.3d 155, 161 (Tex. App.—San Antonio 2003, no pet.) (holding that, because evidence was lost, request for dismissal of charges was appropriate and that a speedy trial was no longer in defendant's best interest).

Appellant first asserted his speedy trial right when he moved to set aside the indictment more than eight years after he had been indicted. Appellant argues that he asserted his right

shortly after being finally arrested and finally becoming aware of the charges." The State responds that Appellant was aware of the charges against him in 2002 and that his failure to assert his right to a speedy trial until 2010 strongly indicates that "Appellant did not really want a speedy trial." Appellant's awareness of the pending charges was disputed at the hearing. Appellant testified that he had no knowledge of formal charges against him until his arrest in August 2010. Appellant alleged that he called the Throckmorton County sheriff's office on three occasions between 2002 and 2004 to inquire about the status of the investigation against him. He testified that he specifically remembered calling in 2004 because he was about to get married and have a baby. According to Appellant, no one ever returned his calls. Investigator Griffin testified, however, that he spoke to Appellant in 2002 and informed Appellant that he had been indicted. Further, Investigator Griffin informed Appellant that there was a warrant out for his arrest and that "it would be better if he turned [himself] in instead of maybe going around and getting picked up in the middle of the night and hav[ing] to stay in jail a day or two before they set bond or something." When asked whether Appellant was aware of the pending charges, the investigator responded that "there's no question he was aware of it."

As we stated above, we view all of the evidence in the light most favorable to the trial court's ultimate ruling and defer to the trial court's resolution of disputed facts and to the reasonable inferences drawn from those facts. *Kelly*, 163 S.W.3d at 726; *Zamorano*, 84 S.W.3d at 648. Based on the evidence offered at trial, the determination of whether Appellant was aware of the indictment prior to his arrest in 2010 turns on whether the trial court believed Investigator Griffin's testimony or Appellant's testimony.

Both in his brief and at oral argument, Appellant challenged the credibility of Investigator Griffin. However, that is a call that we are not allowed to make; that is a determination for the trier of fact. Viewing the evidence in the light most favorable to the trial court's ultimate ruling and deferring to the trial court's credibility determination, we conclude that the facts before us support the trial court's implied finding that Appellant was aware that he had been indicted in Texas and quietly acquiesced in the eight-year period of inaction. We agree with the State that, because the trial court found that Appellant was aware of the charges he was facing in 2002 yet failed to assert his right until 2010, "this indicates strongly that the Appellant did not really want a speedy trial." In addition, the record reveals that Appellant's only action to assert his right was to file a motion seeking dismissal of the case. Appellant never sought a speedy trial, and his

7

actions demonstrated only the desire to avoid a trial and obtain a dismissal. This weighs heavily against finding a speedy trial violation.

### D. Prejudice from the Delay

We assess any possible prejudice in light of the interests that the guarantee to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532. Of the factors, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Affirmative proof of particularized prejudice is not essential in every case because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655. "On the other hand, this 'presumption of prejudice' is 'extenuated . . . by the defendant's acquiescence' in the delay." *Dragoo*, 96 S.W.3d at 315 (quoting *Doggett*, 505 U.S. at 658).

Appellant argues that, "when the length of delay is coupled with the police's complete lack of effort to arrest or warn [Appellant] of the charges in any way, the only conclusion can be that actual prejudice is demonstrated." In response, the State argues that the "presumption of prejudice is extenuated by the Appellant's acquiescence in the delay." Because the trial court found that Appellant was aware of the pending charges, we agree with the State that the presumption of prejudice has been "extenuated" by Appellant's failure to assert his right to a speedy trial. *See Doggett*, 505 U.S. at 658.

As for particularized prejudice, Appellant was not incarcerated during the delay and has never claimed that his defense was specifically impaired. We recognize that Appellant suffered prejudice by having to live under a cloud of suspicion and anxiety for more than eight years. Although Appellant testified that he "handled" his case in Michigan differently than he would have otherwise, he neither explained how that prejudiced him nor demonstrated how he was prejudiced in his defense. Consequently, this factor weighs against finding a speedy trial violation.

### E. Balancing

We have weighed each factor and must now balance their relative weights in light of the conduct of the parties. *Cantu*, 253 S.W.3d at 281. The general rule is that, when the government's negligence causes an extraordinary delay, a defendant is entitled to dismissal of

the charges unless the presumption of prejudice is either persuasively rebutted or "extenuated" by the defendant's actions. *See Doggett*, 505 U.S. at 658. While we presume prejudice from extraordinary delay and tax any negligence against the government, we also consider whether a defendant's failure to assert his right contributed to the delay and resulting prejudice.

It is clear that the length of delay between indictment and trial was extraordinary; the delay is more than eight times longer than the one year that is generally sufficient to trigger a speedy trial claim. *See Doggett*, 505 U.S. at 652 n.1. As for the reasons for the delay, the State could not explain why it withdrew the hold on Appellant, although the sheriff agreed that it was likely due to a lack of formal charges. The sheriff admitted that his office acted negligently when it took no steps to notify Appellant of the pending charges while he was outside the state.

There are two counterbalancing considerations, however, that outweigh these deficiencies. First, Appellant's prejudice was minimal. Although we recognize that Appellant had to live under a cloud of suspicion for more than eight years, we also recognize that Appellant's own actions contributed to the delay and resulting prejudice. While Appellant claimed "substantial damage to the preparation of his defense," there is no claim that witnesses died, became unavailable, or had a lapse in memory or that evidence became unavailable or unusable as a result of the delay. Our review of the record did not reveal any other evidence of prejudice.

The second consideration, which is even more important than the absence of serious prejudice, is that Appellant did not want a speedy trial. *See Barker*, 407 U.S. at 534. We defer to the trial court's determination that Appellant was aware of the indictment in 2002, and there is no evidence that Appellant sought an immediate trial once he learned of the formal charges. While he moved to dismiss the indictment on speedy trial grounds, Appellant made no alternative request for an immediate trial. Instead, the record strongly suggests that Appellant hoped to take advantage of the delay, in which he had acquiesced, by obtaining a dismissal of the charges and that he did not want a trial. *See id.* at 535. Barring extraordinary circumstances that are not present here, "we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Id.* at 536. Accordingly, we hold that Appellant was not deprived of his right to a speedy trial, and his sole issue on appeal is overruled.

### III.  Holding

The judgment of the trial court is affirmed.


MIKE WILLSON

JUSTICE


February 28, 2013

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

10