Opinion filed August 14, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00153-CR

_____

**CAMERON WARREN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 1**
**Denton County, Texas**
**Trial Court Cause No. CR-2023-06482-A**

**M E M O R A N D U M   O P I N I O N**

Appellant, Cameron Warren, was charged by information with the Class A misdemeanor offense of driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. §§ 49.04(a), (d), 49.09(a) (West Supp. 2024). Appellant filed a speedy trial demand and later a motion to dismiss alleging that the State violated his right to a speedy trial, which the trial court denied after a hearing. Subsequent to the trial court's ruling on Appellant's motion, and pursuant to a negotiated plea agreement between the parties, Appellant entered a plea of nolo contendere to the charged

offense. Consistent with the parties' agreement, the trial court convicted Appellant of the charged offense and sentenced him to confinement in the Denton County jail for 365 days; however, the trial court suspended the imposition of this sentence and placed Appellant on community supervision for twenty months.

On appeal, Appellant argues that the trial court erred when it denied his motion to dismiss.[1] We affirm.

## I. *Factual and Procedural Background*

Appellant was arrested for DWI on September 13, 2022. On October 23, 2023, the State filed an information charging Appellant with this offense. Three days later, counsel for Appellant filed a letter of representation, and an omnibus motion that included, among other things, a generic "Demand for Speedy Trial" without supporting arguments or case authority, and a request for discovery. On December 29, 2023, and because the State had yet to produce the discovery that he requested, Appellant filed a motion to dismiss alleging that the State by its conduct had violated his right to a speedy trial. On January 3, 2024, the State filed a motion to amend its information, which the trial court granted the next day, to assert an enhancement allegation that referenced Appellant's prior misdemeanor DWI conviction.

The trial court set a hearing on Appellant's motion to dismiss for January 26, 2024. The hearing proceeded as scheduled and, after considering the evidence presented—which consisted of only two exhibits—and trial counsels' arguments, the trial court on the same day denied Appellant's motion and later signed findings of fact and conclusions of law. On April 22, 2024, the trial court approved the parties' negotiated plea agreement, convicted Appellant of the charged offense,

---

[1]Pursuant to Misc. Docket Order No. 24-9013 issued by the Texas Supreme Court on March 21, 2024, this appeal was transferred to us from the Second Court of Appeals. Therefore, as the transferee court, we must decide the issues raised in this appeal in accordance with the precedent of the Second Court of Appeals if its precedent conflicts with ours. *See* TEX. R. APP. P. 41.3.

placed him on community supervision, and certified that Appellant reserved his right to appeal the trial court's denial of his motion to dismiss. This appeal followed.

## II. *Standard of Review*

A trial court's ruling on a speedy-trial complaint is reviewed under a bifurcated standard. *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014); *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). In this regard, we review a trial court's determination of questions of law de novo to determine whether there is sufficient presumptive prejudice to proceed to a *Barker*[2] analysis and the weighing of the *Barker* factors; we review factual issues under an abuse of discretion standard. *Gonzales*, 435 S.W.3d at 808–09; *Cantu*, 253 S.W.3d at 282.

A review of the *Barker* factors necessarily involves factual determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal question" that we review de novo. *Cantu*, 253 S.W.3d at 282 (alterations in original) (quoting *Zamorano*, 84 S.W.3d at 648 n.19). Under an abuse of discretion standard, we view all the facts in the light most favorable to the trial court's ruling. *Id.* We defer not only to a trial court's resolution of disputed facts; we also defer to the reasonable inferences drawn from those facts that are necessary to support the trial court's findings. *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016); *Gonzales*, 435 S.W.3d at 808–09; *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005). In making its determinations, the trial court may believe or disbelieve any evidence that is presented to it provided there is a reasonable and articulable basis for doing so. *Kelly*, 163 S.W.3d at 728.

---

[2]*See Barker v. Wingo*, 407 U.S. 514 (1972) (holding that a court's evaluation of a speedy-trial complaint includes a consideration of the length of delay, the reason(s) for delay, to what extent the defendant has asserted this right, and any prejudice suffered by the defendant).

We review a trial court's ruling on a motion to dismiss that is based on an alleged speedy-trial violation "in light of the arguments, information, and evidence that was available to the trial court *at the time it ruled*." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (emphasis added). Where, as here, the trial court denied the motion to dismiss, we presume that the trial court resolved any factual disputes or credibility determinations in favor of its ruling, and we defer to the implied findings of fact that the record supports. *See Cantu*, 253 S.W.3d at 282 (citing *Zamorano*, 84 S.W.3d at 648). In the end, we must uphold the trial court's ruling if it finds support in the record and is correct under any applicable theory of law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

### III. *Analysis*

In Appellant's sole issue, he argues that the trial court erred when it denied his motion to dismiss on speedy-trial grounds.

The Sixth Amendment to the United States Constitution, made applicable to state criminal prosecutions through the Fourteenth Amendment, provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI; *see also Gonzales*, 435 S.W.3d at 808. The Texas constitution provides the same protection. TEX. CONST. art. I, § 10. To trigger a *Barker* speedy-trial analysis, the defendant must make a threshold showing that the "interval between [the] accusation and [the date of] trial has crossed the threshold [that separates] ordinary from 'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). If the defendant makes a showing of presumptive prejudice, courts must then consider and weigh each *Barker* factor. *Id.* (citing *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)); *Murphy v. State*, 280 S.W.3d 445, 452 (Tex. App.—Fort Worth 2009, pet. ref'd).

4

After a person is arrested or charged, a speedy-trial complaint is triggered by the passage of time that is deemed to be unreasonable enough under the circumstances to be "presumptively prejudicial." *Barker*, 407 U.S. at 530; *United States v. Marion*, 404 U.S 307, 313 (1971). Post-accusation delay that approaches one year from the date the person is arrested or charged until trial commences "marks the point at which courts deem the delay [to be] unreasonable enough to trigger the *Barker* [i]nquiry." *Doggett*, 505 U.S. at 652 n.1.

When there is a threshold showing of presumptive prejudice, courts must weigh and balance the *Barker* factors based on the conduct of the prosecution *and* the defendant to determine whether an accused has been denied his right to a speedy trial. *Barker*, 407 U.S. at 530; *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017); *Cantu*, 253 S.W.3d at 281; *Dragoo*, 96 S.W.3d at 313. The *Barker* factors focus on (1) the length of the delay, (2) the reason(s) for the delay, (3) whether the defendant effectively asserted his speedy-trial right, and (4) the prejudice caused to the defendant by the delay. *Barker*, 407 U.S. at 530; *Balderas*, 517 S.W.3d at 767; *Gonzales*, 435 S.W.3d at 808. Because these factors are related, no single factor is sufficient to establish a violation of the defendant's right to a speedy trial. *Barker*, 407 U.S. at 530, 533; *Cantu*, 253 S.W.3d at 281; *Dragoo*, 96 S.W.3d at 313. Instead, the four *Barker* factors "must be considered together along with any other relevant circumstances" to determine whether a defendant has been deprived of the right to a speedy trial. *Cantu*, 253 S.W.3d at 281.

In balancing the parties' respective conduct, the State has the burden to justify the length of delay, while the defendant has the burden to prove that he effectively asserted his right and was in turn prejudiced. *Cantu*, 253 S.W.3d at 280 (citing *Barker*, 407 U.S. at 531); *see Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973). The defendant's burden of proof on factors three and four "varies inversely" with the State's degree of culpability for the delay. *Cantu*, 253 S.W.3d

at 280. "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

The only possible remedy for a violation of the defendant's right to a speedy trial is the dismissal of the charging instrument with prejudice. *Strunk v. United States*, 412 U.S. 434, 440 (1973); *Cantu*, 253 S.W.3d at 281. Because dismissal of the pending charge is an extreme remedy, courts should apply and balance the *Barker* factors "with common sense and sensitivity to ensure that [a charge is] dismissed only when the evidence shows that a defendant's actual and *asserted* interest in *a speedy trial* has been infringed." *Cantu*, 253 S.W.3d at 281 (emphasis added). This is so because "[t]he constitutional right is that of a speedy trial, not [the] dismissal of the charges." *Id.*

In this case, the trial court found that the first factor weighed against the State and that the second factor was neutral and weighed only slightly against the State; its findings on factors three and four weighed in favor of the State. Appellant argues on appeal that the trial court's denial of his motion to dismiss was erroneous because all *Barker* factors, not just factors one and two, weigh in favor of Appellant and show that his right to a speedy trial was violated.

1. *Presumptive Prejudice and the Length of the Delay*

"The length of delay is a double inquiry: A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper*, 520 S.W.3d at 924. In most instances, the length of delay is measured from the date the defendant is arrested or formally charged until the date that trial commences or the defendant's formal demand for a speedy trial is asserted. *Marion*, 404 U.S. at 313; *Gonzales*, 435 S.W.3d at 809; *Shaw*, 117 S.W.3d at 889; *Zamorano*, 84 S.W.3d at 649 (the defendant's plea date was relied on to

determine the date that the delay calculation should end); *Black v. State*, No. 02-21-00057-CR, 2022 WL 3464563, at *4 (Tex. App.—Fort Worth Aug. 18, 2022, no pet.) (mem. op., not designated for publication) (same). In the interest of justice, we calculate the length of the delay that encompasses the greatest possible period of time. *See State v. Echols*, No. 11-19-00209-CR, 2021 WL 2174148, at *3 (Tex. App.—Eastland May 28, 2021, pet. ref'd) (mem. op., not designated for publication); *State v. Davis*, 549 S.W.3d 688, 698 (Tex. App.—Austin 2017, no pet.).

Although the Supreme Court has held that, generally, a delay approaching one year is sufficient to trigger a *Barker* speedy-trial inquiry, the precise length of the delay that is needed depends on the facts and complexity of the case. *See Doggett*, 505 U.S. at 652 n.1; *Barker*, 407 U.S. at 530–01; *Balderas*, 517 S.W.3d at 768. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Additionally, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. Thus, the longer the delay beyond the triggering length, the more prejudicial the delay can be to the defendant. *Zamorano*, 84 S.W.3d at 649.

Here, Appellant was arrested on September 13, 2022; however, he was not formally charged by information until October 23, 2023. Appellant filed a boilerplate speedy trial demand three days later and subsequently a motion to dismiss on December 29, 2023. The State has conceded (at the hearing and on appeal), and the trial court found, that the length of the delay in this case—which extended from the date of Appellant's arrest (September 13, 2022) to the date that Appellant's motion to dismiss was heard (January 26, 2024)—was sufficient to trigger a review of Appellant's speedy-trial complaint. Thus, when the complained-of period of time exceeds the minimum that is required to trigger such a review, as it does here, this

factor, generally, weighs against the State. *See Zamorano*, 84 S.W.3d at 649; *see also Barringer v. State*, 399 S.W.3d 593, 600 (Tex. App.—Eastland 2013, no pet.); *Schuman v. State*, No. 11-22-00300-CR, 2024 WL 847692, at *8 (Tex. App.—Eastland Feb. 29, 2024, pet. ref'd) (mem. op., not designated for publication).

We agree with the trial court that the first *Barker* factor weighs against the State. Nevertheless, while the delay in this case exceeds the minimum one-year threshold, to determine whether there has been a speedy-trial violation, all *Barker* factors must be weighed and balanced together. *See Cantu*, 253 S.W.3d at 281.

2. *The Reason(s) for the Delay*

The second *Barker* factor requires that the trial court review the State's reason(s) or justification for the delay. *Barker*, 407 U.S. at 531. Under *Barker*, different reasons for the delay are assigned different weights. *Balderas*, 517 S.W.3d at 768; *Munoz*, 991 S.W.2d at 822. Deliberate attempts to delay proceeding to trial should weigh heavily against the State, while a valid reason or reasons for a delay should not. *Balderas*, 517 S.W.3d at 768; *Munoz*, 991 S.W.2d at 822. A more neutral reason, such as official negligence or overcrowded trial court dockets, is afforded less weight but, nevertheless, may weigh against the State, because the ultimate responsibility for proceeding to trial expeditiously rests with the State. *Barker*, 407 U.S. at 531; *Balderas*, 517 S.W.3d at 768; *Zamorano*, 84 S.W.3d at 650–51.

The State has the burden to provide a valid reason or reasons that would excuse the delay, and "in light of a silent record or one containing reasons [that are] insufficient to excuse the delay, it must be presumed that no valid reason for [the] delay existed." *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). Although an "unexplained" delay may weigh heavily against the State in some instances, *Gonzales*, 435 S.W.3d at 810, if no evidence is presented that such a delay on behalf of the State was *deliberate*, this factor will weigh against the State, but not

8

heavily. *Zamorano*, 84 S.W.3d at 649–51. Conversely, any delay that is caused by or attributable to the defendant or defendant's trial counsel generally weighs heavily against the defendant. *See Munoz*, 991 S.W.2d at 822; *Lopez v. State*, 478 S.W.3d 936, 943 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding that time attributable to agreed resets should be excluded from a speedy trial calculation).

We note that Appellant and his trial counsel signed "reset" forms—which have the effect of rescheduling case events to a later date—on November 27, 2023, January 26, 2024, and February 26, 2024, actions which Appellant fails to acknowledge on appeal. Thus, the time attributable to these resets must be excluded from the speedy trial calculation. *Lopez*, 478 S.W.3d at 943. As such, the length of delay of which Appellant complains here is significantly less than the three-year to eight-year delays that the Court of Criminal Appeals has held weigh "heavily" against the State. *See Balderas*, 517 S.W.3d at 768 (eight-year delay); *Dragoo*, 96 S.W.3d at 314 (delay of three and one-half years); *Zamorano*, 84 S.W.3d at 649. To the contrary, the delay in this case is more akin to the eight-month delay that the Fifth Court of Appeals addressed in *State v. Page*, No. 05-18-01391-CR, 2020 WL 1899453, at *5 (Tex. App.—Dallas Apr. 17, 2020, no pet.) (mem. op., not designated for publication), authority upon which Appellant relies.

Appellant contends that the State failed to timely comply with its Article 39.14(a) discovery obligations when it did not produce the discovery requested by his trial counsel in the omnibus motion until more than three months later, which disclosure occurred during the hearing on Appellant's motion to dismiss. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2024). According to Appellant, such conduct in failing to timely produce discovery constitutes extreme negligence or willful conduct on behalf of the State, which, in the *Barker* analysis, weighs heavily in favor of Appellant. *See Fuller v. State*, 624 S.W.3d 855, 865 (Tex. App.—Fort Worth 2021, pet. ref'd). Thus, Appellant

asserts that the State's unexplained delays, official negligence, and disregard for its discovery obligations weigh in favor of Appellant.

The State argues that it did not produce the requested discovery sooner because Appellant's discovery request was not served on or directed to the prosecutor that was assigned to litigate the case; the State also notes that the requested discovery was provided to Appellant and his trial counsel at the hearing once the lead prosecutor became aware of this request. Despite this misstep, there is no evidence that the State deliberately or intentionally withheld discovery. Thus, the length of the State's delay in producing Appellant's requested discovery weighs in favor of Appellant, but not heavily as he suggests. *Richardson v. State*, 631 S.W.3d 269, 276 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd).

At the hearing, the State presented no testimony concerning the reason(s) for the delay in (1) law enforcement completing its investigation, (2) formally charging Appellant, or (3) proceeding to trial. Instead, the State offered the affidavit of Brandie Bryson, the Administrative Manager for the Misdemeanor Intake Division of the Denton County District Attorney's Office, that outlined the timeline of events and how the district attorney's office processed this case. The trial court found that "[t]here was no evidence or testimony [presented] for [the State's] reason for the delay." However, the trial court determined that the second *Barker* factor weighed only "slightly" against the State. Because the State did not explain or offer any valid reason for the delay, and relying on *Gonzales* and *Zamorano*, Appellant argues that this factor should weigh more heavily against the State.

In response, the State asserts that a reason for the delay in charging Appellant was because the State did not receive the original case file from law enforcement until eleven months after Appellant's arrest. The State further avers that Appellant did not present any *evidence* to show that it acted in bad faith or *deliberately* attempted to delay proceeding to trial. We recognize that any delay attributable to

10

the State is generally not excused by blaming the inefficiencies of law enforcement or testing agencies. *Black*, 2022 WL 3464563, at *5–7 (delays by law enforcement weigh against the State, but not heavily); *see Fuller*, 624 S.W.3d at 865; *Ex parte Martin*, 33 S.W.3d 843, 846–47 (Tex. App.—Austin 2000, pet. dism'd) (op. on reh'g). However, we agree with the State that there is no evidence that any delay by it was either deliberate or intended to impair Appellant's ability to develop a defense.

According to Appellant, the "overall" cause for the delay in prosecuting his case was the State's negligence or willful conduct. However, there is no evidence in the record suggesting that the State *deliberately* attempted to delay the prosecution of Appellant's case. As such, and as the trial court found, we conclude that the second *Barker* factor weighs against the State, but only slightly, not heavily as Appellant contends. *See Dragoo*, 96 S.W.3d at 314 (explaining that any delay weighs against the State if not justified but that, to weigh heavily, there must be evidence of "a deliberate attempt on the part of the State to prejudice the defense"); *see also Barringer*, 399 S.W.3d at 600.

3. *Appellant's Assertion of His Right to a Speedy Trial*

A defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant was deprived of that right. *Barker*, 407 U.S. at 531–32. It is well-settled that the State bears the burden to promptly bring the defendant to trial, but the defendant nonetheless has the burden to prove that he effectively *asserted* his right *to a speedy trial*. *Munoz*, 991 S.W.2d at 825; *Davis*, 549 S.W.3d at 704; *Barringer*, 399 S.W.3d at 599. A demand for a speedy trial should be an unambiguous assertion that is clear enough to convey to the trial court or the State that the defendant is asserting this right. *Davis*, 549 S.W.3d at 704 (citing *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013)); *Bailey v. State*, 885 S.W.2d 193, 201 (Tex. App.—Dallas 1994, pet. ref'd). As the length of the delay increases, a defendant who is diligent and desires to have

a speedy trial is, and should be, more likely to take some action to assure that his trial commences promptly; thus, "inaction weighs more heavily against a violation the longer the delay becomes." *Balderas*, 517 S.W.3d at 771; *Dragoo*, 96 S.W.3d at 314 (quoting George E. Dix & Robert O. Dawson, 42 *Texas Practice Series: Criminal Practice & Procedure* § 23.40 (2d ed. 2001)).

Importantly, "[t]he constitutional right is that of a speedy trial, not [to the] dismissal of the charges." *Cantu*, 253 S.W.3d at 281. Filing a motion to dismiss and requesting that the trial court dismiss the pending charges based on an alleged speedy-trial violation, as opposed to filing a motion for speedy trial that instead requests a prompt trial setting, attenuates the strength of a speedy-trial complaint because it creates an inference that the defendant prefers no trial at all, rather than a speedy trial. *Id.*; *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983); *Stiles v. State*, 596 S.W.3d 361, 367–68 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

Appellant contends that: (1) he filed a speedy-trial demand at the first opportunity; (2) the State's delays and inaction prevented him from filing a speedy-trial demand sooner and before this case was docketed; and (3) he moved for a dismissal after discovery was not timely provided to him in response to his request. In response, the State asserts that Appellant's trial counsel served the speedy-trial demand on an attorney who was not directly assigned to litigate the case and had an unknown role in this prosecution.

On October 26, 2023, Appellant's trial counsel filed a letter of representation, and a six-page document entitled "Omnibus Requests," which included, among other things, a discovery request and a boilerplate, general demand for a speedy trial that states as follows: "COMES NOW the defendant, by and through his attorney of record, and requests a speedy trial of the charges filed against the above named defendant. The defendant has a right to a speedy trial." No arguments or supporting

12

authorities accompanied or were cited in this demand. After signing a "reset" form on November 27, one month later Appellant's trial counsel filed a motion to dismiss alleging, generally, that the State had violated Appellant's right to a speedy trial.

At the hearing, Appellant's trial counsel claimed that he could not file any documents or requests for discovery on behalf of Appellant until the State filed an information and the case was docketed with the Denton County Clerk's office. The State responded that delaying or refusing to advocate in this manner was unnecessary because Appellant's trial counsel could have sent his requests to or otherwise contacted the district attorney's office to discuss his concerns, which routinely occurs in such situations. This was not done. In fact, Appellant presented no evidence that either he or his trial counsel contacted or attempted to follow up with the State regarding Appellant's requests for discovery or his demand for a speedy trial before the hearing commenced. Moreover, neither Appellant nor his trial counsel demanded a trial setting when they signed "reset" forms on November 27, 2023, and January 26, 2024; rather, they only requested a dismissal of the case. Filing a motion to dismiss without requesting, in the alternative, an immediate trial setting dilutes a speedy-trial complaint. *Barker*, 407 U.S. at 534–35; *Balderas*, 517 S.W.3d at 771; *Cantu*, 253 S.W.3d at 283; *Black*, 2022 WL 3464563, at *8–10.

Despite this, Appellant asserts that he aggressively demanded, sought, and pursued a speedy trial, and thus moving for a dismissal was the appropriate course of action because the delays that were attributable to the State caused him prejudice. *See Phillips*, 650 S.W.2d at 401. However, moving for dismissal, as Appellant did here, is only appropriate in such circumstances when defense counsel reasonably and legitimately believes that a *lengthy* delay has resulted in prejudice to the defendant. *Id.* Moreover, Appellant's assertions and complaints are essentially identical to and mirror those which the appellant advanced and the Second Court of Appeals rejected in *Black,* an analysis that applies here and a decision with which

13

we agree.  2022 WL 3464563, at \*5–12; *see also Cantu*, 253 S.W.3d at 277, 282–85 (holding there was no speedy-trial violation where the defendant was arrested for DWI, formally charged over one year later, and filed a motion to dismiss two months after he was charged).

The trial court found that Appellant's speedy trial assertions were pro forma, short, lacking in "force" and legal argument, attenuated by the filing of a motion to dismiss instead of a motion for speedy trial, and that Appellant desired a dismissal and "to have no trial instead of a speedy one."  In so finding and making its credibility determinations, the trial court could have reasonably concluded that (1) Appellant could have filed a speedy trial demand at any time after his arrest, which he did not do, (2) a pre-filing speedy-trial demand could have been made by Appellant considering that *Black* is a case that originated from Denton County and involved a misdemeanor offense, and (3) Appellant's primary objective was to obtain a dismissal of the information, not a speedy trial.  We conclude that the record supports the trial court's findings, and we defer to its determinations, as we must. *See Black*, 2022 WL 3464563, at \*8–10.  Accordingly, we agree with the trial court that the third *Barker* factor weighs against Appellant.

4. *Prejudice to Appellant*

The final *Barker* factor requires that we determine whether, and to what extent, the defendant suffered prejudice because of the delay.  *Barker*, 407 U.S. at 532.  We assess the weight of any prejudice by considering the interests that the right to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the defendant's anxiety and concern, if any; and (3) to limit the possibility that the defendant's defense would be impaired.  *Id.*  Of these factors, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*; *Balderas*, 517 S.W.3d at 772.  However, the impairment of one's defense is the "most difficult

14

form of speedy trial prejudice to prove." *Doggett*, 505 U.S. at 655. Here, Appellant was not confined during the pendency of the case, and he presented no evidence at the hearing of oppressive pretrial incarceration or any significant pretrial anxiety or concerns. Thus, we focus on the final and most serious factor—the extent to which Appellant's defense was impaired, if at all. *See Dragoo*, 96 S.W.3d at 315.

Under this factor, a defendant has the burden to show that he suffered *some* prejudice; he need not necessarily make a showing of actual prejudice. *Balderas*, 517 S.W.3d at 772; *Munoz*, 991 S.W.2d at 826. Once the defendant makes a prima facie showing of prejudice, the burden shifts to the State to prove that the defendant suffered no prejudice other than what would typically result from an ordinary delay. *Cantu*, 253 S.W.3d at 280–81. "We assess prejudice according to a sliding scale." *Hopper v. State*, 495 S.W.3d 468, 479 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017). Proof of particularized prejudice is not essential in every case because "*excessive* delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655 (emphasis added); *see Shaw*, 117 S.W.3d at 890. On the other hand, the presumption of prejudice is extenuated by the defendant's acquiescence in the delay. *Doggett*, 505 U.S. at 658; *Dragoo*, 96 S.W.3d at 315.

Appellant claims that he is the caretaker for his "aging grandmother" and that he experienced "unusual anxiety and concern" about how his potential incarceration would prevent him from caring for her, and the attendant risks if the disposition of this case was delayed. This, Appellant asserts, constitutes a specific degree of anxiety that demonstrates prejudice. *See Zamorano*, 84 S.W.3d at 654.

Nevertheless, Appellant presented no *evidence* at the hearing to support his claims of anxiety or the potential impairment of his defense. Rather, Appellant relied exclusively on the statements and arguments made by his trial counsel at the hearing and the assertions outlined in his motion to dismiss. However, "statements of an

15

attorney on the record may be considered as evidence only if the attorney 'is speaking from first-hand knowledge.'" *Gonzales*, 435 S.W.3d at 811–12 (quoting *State v. Guerrero*, 400 S.W.3d 576, 585 (Tex. Crim. App. 2013)). In this case, there is no evidence of any such "first-hand" knowledge. Further, we may not consider record evidence that was not before the trial court when it ruled. *Balderas*, 517 S.W.3d at 768; *Dragoo*, 96 S.W.3d at 313 (Rulings on a motion to dismiss for an alleged speedy-trial violation should be reviewed "in light of the arguments, information, and evidence that was available to the trial court at the time it ruled.").

To show the circumstances of his living and familial situation, Appellant was required to present some form of admissible evidence to support his assertions. Here, Appellant did not, and the trial court found that no evidence was presented concerning Appellant's alleged anxiety and concerns because the only source of this was derived from the statements and arguments made by his trial counsel during the hearing. Thus, we may not consider these remarks in our prejudice analysis because proper evidence of it was not before the trial court. *See Balderas*, 517 S.W.3d at 768. Nevertheless, even if we did, prejudice cannot be shown because any anxiety, inconvenience, or embarrassment that was allegedly caused by Appellant's pending charge would not be beyond that which would normally be experienced by any defendant who is on bond for a second misdemeanor DWI charge. *See Page*, 2020 WL 1899453, at *10.

Relying on *Clarke v. State*, 928 S.W.2d 709, 717 (Tex. App.—Fort Worth 1996, pet. ref'd), Appellant argues that he made a prima facie showing of "some" prejudice because, rather than responding to his speedy trial request and timely producing discovery, the State instead chose to amend its information to include an enhancement allegation of a prior DWI conviction that, Appellant asserts, increased the "seriousness" of the pending charge to a DWI 2nd offense. Because of this, Appellant claims that he was prevented from (1) contesting the "enhanced" charge

16

at trial, (2) pleading to a lesser offense (which is an indicator that Appellant did not intend to go to trial), and (3) asserting a defense to the suspension of his driver's license. But contrary to Appellant's assertions, the record shows that he was aware that the offense for which he was charged in this case was a DWI 2nd offense because the petition for an occupational license that he filed on January 17, 2023, clearly states that this charge is a "DWI 2nd" offense. Nevertheless, Appellant cannot show that he was prejudiced by the State alleging this enhancement because (1) his prior DWI conviction became final prior to him being charged with the DWI offense in this case, and (2) the DWI offense for which he was charged in this case could have been enhanced, if necessary, at any point after his arrest.

Moreover, Appellant's claim of prejudice on this point fails because the DWI offense as originally charged, like the enhanced offense, is a Class A misdemeanor—the original information alleged that an analysis of Appellant's alcohol concentration revealed a level of 0.15 or more. PENAL § 49.04(d). Therefore, the enhancement and its alleged "serious consequences" are immaterial and could not have affected Appellant's punishment or the preparation of his defense.

Finally, Appellant argues that the State's "excessive delay" in producing discovery impeded his ability to prepare a defense to the pending DWI charge because "how could he know whether crucial evidence had been lost or [a key witness was] unavailable?" However, the requested discovery was provided to Appellant and his trial counsel during the hearing and neither Appellant nor his trial counsel requested that the trial court reconsider its denial of the motion to dismiss, presumably after they reviewed the produced discovery.

Here, and despite Appellant's repeated assertions, there is nothing in the record to indicate that Appellant was prejudiced in any substantive manner, if at all, by the delay. Thus, because Appellant failed to meet his burden to show that he was

prejudiced, we conclude, consistent with the trial court's findings, that the fourth *Barker* factor weighs against Appellant.

    5. *Balancing the Factors*

As it has been said, we must weigh and balance the *Barker* factors together "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Balderas*, 517 S.W.3d at 773 (quoting *Cantu*, 253 S.W.3d at 281). We must also give due deference to the trial court's factual findings and any reasonable inferences that find support in the record. *Id.* at 767–68. Based on the record before us, when we consider, weigh, and balance all the *Barker* factors together, and the *evidence* presented to the trial court, we cannot say that Appellant's right to a speedy trial was violated. *See Barker*, 407 U.S. at 534–36; *Cantu*, 253 S.W.3d at 282; *Zamorano*, 84 S.W.3d at 648; *Black*, 2022 WL 3464563, at *5–12. Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to dismiss. *See Schuman*, 2024 WL 847692, at *9–12 (an eighteen-month delay between the defendant's arrest and the commencement of trial did not result in a speedy-trial violation); *Lowe v. State*, No. 11-15-00094-CR, 2017 WL 2588210, at *6–7 (Tex. App.—Eastland Apr. 28, 2017, no pet.) (mem. op., not designated for publication) (a thirty-five-month delay did not result in a speedy-trial violation); *Torres v. State*, No. 11-13-00172-CR, 2015 WL 4438051, at *3 (Tex. App.—Eastland July 16, 2015, no pet.) (mem. op., not designated for publication) (a seven-year delay between indictment and the commencement of trial did not result in a speedy-trial violation); *see also Barringer*, 399 S.W.3d at 600–02 (an eight-year delay did not constitute a speedy-trial violation).

Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


August 14, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.